IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No: 1:14-CR-397 |
| | : | |
| REUVEN MIRLIS | : | |
| Defendant. | : | |

## **DEFENDANT'S POSITION ON SENTENCING**

Reuven Mirlis is currently before this Court for sentencing upon his guilty plea to a single count of conspiracy, in violation of Title 18 U.S.C. § 371, which carries a sentence range of not more than five years of incarceration, a two hundred and fifty thousand dollar ($250,000.00) fine, payment of full restitution, and not more than three years of supervised release.

## **INTRODUCTION**

This matter is before the Court for imposition of sentence stemming from a limited period of criminal culpability by Reuven Mirlis in a much longer standing, sophisticated, and substantial income-based criminal conspiracy led by established adults with life experience who were willing to have young people involved as their salesman in a criminal enterprise. At the outset, one thing is clear: Reuven Mirlis, and for that matter Asaf Ibrahimian, had no role in coming up with the criminal scheme, development, growth, or methodology of the activity. In fact, the government has correctly identified the lead defendants who had an exceedingly greater role in the offense than Reuven Mirlis. Mr. Mirlis was invited to do work for TC Medical Group in Toronto, Canada by a person he saw as a friend and peer, Shlomo David Rabi.

While there is no dispute that after a period of months Mr. Mirlis became aware of not only the suspicious, but likely criminal conduct in which he was participating, his role was only that of a sales person operating within the well-established TC Medical scheme, and with skills and procedures established by David Burke and others, and regularly communicated by Shlomo Rabi.

To be clear, Mr. Mirlis does not in any manner diminish the importance of his own misconduct in light of his realization that misrepresentations were being made regarding the origin of the products and governmental compliance factors. Such actions were wrong, criminal, and require consequences. However, given the entirety of the life history of Mr. Mirlis, how he entered into the TC Medical relationship, his own abandonment of employment with TC Medical, and particularly his potential for the future, it is respectfully suggested that a probationary sentence, in light of Mr. Mirlis having the designation of being a convicted felon for the rest of his life, is simply enough to meet all of the statutory and traditional roles of sentencing.

The presentence report ("PSR") sets forth in detail, and with particularity, not only the life history and circumstance of Mr. Mirlis, but also the offense conduct, history of others within the conspiracy, and the minimal offense role from not only a conduct point of view, but also a dollar amount in which Mr. Mirlis and Mr. Ibrahimian were responsible for only a small fraction of the gross income of the conspiracy. Mr. Mirlis did not supervise any other person, give directions, or arrive at sales templates or methodology. The conspiracy started well before Mr. Mirlis was approached by Mr. Rabi to work with him in Toronto, and continued on in the same fashion long after Mr. Mirlis left TC Medical Group. His role was therefore minimal in that he did not grow the business, engage in affirmative development of criminal activity, or foster the

enrollment of others. Simply, Mr. Mirlis did his work for a period of time and then left the employee of the business; nothing more and nothing less.

As is stated in the PSR in paragraph 22, Reuven Mirlis was a sales representative for TC Medical Group and SB Medical, Inc. Nowhere in the report is he described as being any more or less involved than that.

## CASE BACKGROUND

The Court is familiar with this case and the history having dealt with all of the co-defendants and related parties. The PSR outlines Reuven Mirlis' personal, educational, and work history, as well as his family and personal challenges that will not be repeated here. However, filed with this memorandum as Exhibit 1 are support and character letters submitted on behalf of Reuven Mirlis from his mother, other family members, and friends. As always, the evaluation of character letters is important. Reuven Mirlis is a young man who does not have a public history. If older, and longer involved in adult involvement in the community, there is little question that additional historical information would be provided showing that Mr. Mirlis has done well. His foundation, albeit with this challenging set of circumstances, as is seen in the support letters, still predicts success in the future. Mr. Mirlis has not hidden his behavior from those who surround him, and will be able to rely on their support for his stability in the future and direction in the event he faces challenging circumstances. Likewise, it is important that Reuven Mirlis be able to demonstrate to those who so closely support him, his ability to do better and then well in the future within the rules and the accepted standards of behavior within the community.

The Court is asked to consider the difficulties of Mr. Mirlis' life history, family tragedies, and the virtually neglected upbringing he had due to circumstances beyond his control. "[I]f ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto it should be at the moment of his sentencing, where his very

future hangs in the balance." *United States v. Addelson,* 441 F.Supp.2d 506, 513-14 (S.D.N.Y. 2006). With regard to Mr. Mirlis' personal history and characteristics, as detailed in all of the materials before the Court, Mr. Mirlis is now going to have to move forward being tagged as a convicted felon for the entirety of his future. While not authorized under the law, it is tragic that the federal criminal justice conviction and sentencing process does not have a deferred finding or suspended imposition of sentence possibility so that Reuven Mirlis could prove his worth and stamina for hard work for the Court to consider, even years down the road, vacating this conviction. Given the first offender status of this matter and the minimal role in the offense conduct, versus Mr. Mirlis' potential for the future, such a possibility would be favorable and meaningful for both Mr. Mirlis and the community. That said, such a result is not possible. The Court does, however, have the authority to depart downward, and in light of a related Motion anticipated to be filed by the government, and further given Mr. Mirlis' early acceptance of responsibility, entry of a plea of guilty at the earliest stages of this proceeding, remorse, and cooperation with his Probation Officer, that this young man gets it. Punishment for punishment's sake is not necessary in this instance.

## THE SENTENCING GUIDELINES

Reuven Mirlis does not dispute the sentencing guideline calculation prepared by Probation Officer Lowe, except, that at this point, given the guilty pleas by all involved, and further knowledge now known to Mr. Mirlis and counsel regarding the relative degree of culpability in this conspiracy, it appears that a minimal role adjustment reducing the offense level by four (4) is appropriate. See U.S.S.G. § 3B1.2. It is important that the sentencing guidelines reflect the relative degree of culpability, efforts in developing the criminal conspiracy, profit benefit, and intent to continue on in the future.. A minimal role offense level reduction makes clear the differentiation between that which Mr. Mirlis did and the conduct of all others.

**UNITED STATES v. BOOKER**

As the Court well knows, the sentencing guidelines are merely advisory. *United States v. Booker*, 543 U.S. 220 (2005). The Court is free to set a sentence based upon an analysis of the factors set forth in Title 18 U.S.C. § 3553(a), including the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment, (2) to afford adequate deterrence to criminal conduct, (3) to protect the public from further crimes of the defendant, and (4) to provide the defendant with needed treatment. The statute instructs the district court to "impose a sentence sufficient, but not greater than necessary to comply with" these goals of sentencing. *Id.*

The Court gave guidance on the sentencing process in *Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586 (2007), and *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558 (2007). These cases make clear that after calculating the guidelines range, the sentencing court must give the defendant and the government "an opportunity to argue for whatever sentence they deem appropriate." *Gall*, 552 U.S. at 49. The court should then consider all the Section 3553(a) factors, and should then fashion a sentence in light of them. In so doing, the court must not presume that the guidelines range is reasonable. *Id.* at 50.

*Booker*, *Gall*, and *Kimbrough*, and the ongoing development of the Guidelines' proper role, empower a court to select a sentence outside the confines of the guidelines where circumstances combine to make a guidelines sentence unreasonable.[1] Indeed, *Kimbrough* explicitly rejected an argument that the sentencing court must adhere blindly to a Congressional

---

[1] Sentencing below the guideline range is not the same as seeking a downward departure from the guidelines. *See, e.g.*, *United States v. Arnaout*, 431 F.3d 994, 1003 (7th Cir. 2005) ("the concept of 'departures" has been rendered obsolete in the post-*Booker* world."); *United States v. Muhamed*, 459 F.3d 977, 986 (9th Cir. 2006)("We think the better view is to treat the scheme of downward and upward 'departures' as essentially replaced by the requirement that judges impose a 'reasonable sentence.' ").

preference. *Booker*, while requiring the court to give respectful consideration to the Guidelines, "permits the court to tailor the sentence in light of other [section 3553(a)] concerns as well." *Booker*, 534 U.S. at 245.

### REUVEN MIRLIS' PERSONAL HISTORY

Typically in this section of a sentencing memorandum counsel would, in summary fashion, outline his client's life history, both the positive and the negative. However, it is not the goal of the undersigned to restate that which others who have known Reuven Mirlis far longer and in obviously closer fashion have already told the Court. (*See* Exhibit 1 – Collection of Support Letters). Therefore, counsel relies on the life chronology presented in the PSR, but more importantly, the character and support letters filed herewith.

As the Court will see in the materials provided, there is not one exception to the positive descriptions of Reuven Mirlis. While that does not diminish the conduct herein, all of this makes clear that the excitement of youth in engaging in a sales position run by adults and a peer who Mr. Mirlis mistakenly trusted, brought about this downfall. Additionally, all of this makes clear the aberrational nature of what Mr. Mirlis has done and what a small percentage of his overall life history and characteristics should be identified by this conviction. Certainly the 99% Reuven Mirlis is productive, hardworking, contributing, and has been a positive member of his family and community. That 99% overwhelms this misconduct and predicts success in the future. Courts recognize that a "truly extraordinary" charitable history serves as a basis for a variance under 18 U.S.C. § 3553(a). *See e.g., United States v. Howe*, 543 F.3d. 128, 132 (3rd. Cir. 2008) (affirming a sentence of probation and three months home confinement in a wire fraud case where the guideline range was 18 to 24 months, but the defendant's life was marked by outstanding devotion to family, community, and church); *United States v. Thurston*, 544 F.3d. 22, 26 (1st Cir. 2008) (affirming a three month sentence for Medicare fraud conspiracy of more

6

than five million dollars ($5,000,000.00) in which the sentencing guidelines recommended five years of prison time based on, amongst other things, defendant's charitable work, community service, generosity with his time, support and assistance of others).

Clearly the nature and characteristics of the offense conduct versus the history, nature, and characteristics of Reuven Mirlis call for a balance between the imposition of a sentence to serve, deterrence, and the needs of Reuven Mirlis. The consequences of the felony conviction itself are dramatic and amply punish this man.

### NEED FOR SENTENCE TO REFLECT THE SERIOUSNESS OF THE CRIME, PROMOTE RESPECT FOR THE LAW, AND PROVIDE JUST PUNISHMENT

There can be no question that a sentence to serve in prison is true punishment. However, Reuven Mirlis is now a felon, and this will follow him for decades. This young man has been, and will forever continue to be, punished for his actions, whether incarcerated or not.

### RESTITUTION AND FORFEITURE

There is an agreement as to restitution in this case. However, argument will be presented to the Court that consideration should be given for taxes already paid on the income in question.

### REQUEST FOR SELF-SURRENDER, DESIGNATION, AND DELAYED REPORTING

As stated previously herein, Reuven Mirlis and his counsel are hopeful the Court will give strong consideration to a probationary sentence, or perhaps with a period of home incarceration and monitoring. In the event, however, that a period of incarceration is ordered by the Court, a specific designation will be identified at the time of sentencing along with a request for self-surrender to the facility to be designated by the Bureau of Prisons. Mr. Mirlis has been completely cooperative with Probation Officer Lowe, as well as his pre-trial services supervisors, both in the eastern district of Virginia and his home jurisdiction in northern New Jersey. There is no risk of flight or misbehavior.

## CONCLUSION

This is a difficult case. Reuven Mirlis has been and remains an exemplary member of his family and community. Therefore, the Court must find a balance which accounts for punishment, general and specific deterrence, and the beginning of the rehabilitation process in light of his background. Mr. Mirlis has shown that he can follow the rules of supervision and not engage in criminal activities. He has opened up to his family, friends, and expanded community who now know what he has done. The fact of a felony conviction is simply enough given the facts and circumstances of this case. Taken together, all of the § 3553(a) factors confirm that such a sentence, paired perhaps with a significant number of community service hours to be performed, is appropriate here. The difficult upbringing Mr. Mirlis has suffered through, along with his history of hard and good work, obtaining a college degree, and working independently before being drawn to TC Medical, make clear the aberrational nature of this activity, the unlikelihood that he will reoffend, and the prediction of success in the future.

Under these unique circumstances, a fair and just sentence that would be "sufficient but not greater than necessary" to promote deterrence and protect the public from further crimes is consistent with a probationary disposition. Therefore, Reuven Mirlis, through counsel, respectfully urges this Court to impose such a sentence, and if appropriate with a period of home confinement, and the requirement of community service work as opposed to active incarceration. Reuven Mirlis looks forward to being able to prove to this Court, and his family and community, that he has learned from what he has done, this prosecution; that he will improve, and will never be the subject of any proceedings of this nature again.

Respectfully Submitted,  
REUVEN MIRLIS  
By Counsel

GREENSPUN SHAPIRO PC

_____/S/_____
Peter D. Greenspun, Esquire
State Bar I.D. No. 18052
3955 Chain Bridge Road, 2nd Floor
Fairfax, Virginia  22030
703-352-0100
703-591-7268 (facsimile)
pdg@greenspunlaw.com
*Counsel for the Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of August, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

> Alexander T. H. Nguyen, Esquire
> Jay V. Prabhu, Esquire
> Kellen Dwyer, Esquire
> 2100 Jamieson Avenue
> Alexandria, Virginia 22314
> alexander.nguyen@usdoj.gov
> jay.prabhu@usdoj.gov
> kellen.dwyer@usdoj.gov

_____/S/_____
Peter D. Greenspun, Esquire
State Bar I.D. No. 18052
Greenspun Shapiro PC
3955 Chain Bridge Road, 2nd Floor
Fairfax, Virginia  22030
703-352-0100
703-591-7268 (facsimile)
pdg@greenspunlaw.com